COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 54, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees (Patrick S. *et al.*, Defendants).

First District (5th Division)   No. 1—89—1019

Opinion filed June 21, 1991.—Rehearing denied July 26, 1991.

John A. Relias and Jennifer A. Murphy, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Roland Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, denying the motion of Community Consolidated School District No. 54 (School District) for assessment or allocation of attorney fees against the Illinois State Board of Education (ISBE) and the Illinois Department of Mental Health and Developmental Disabilities (DMHDD).

This case arises out of a dispute regarding the appropriate educational placement of Patrick S., a handicapped child of primary school age, who is a resident in the School District. Prior to 1986, Patrick had been been placed by the School District in a special education class at the John Muir School. In May and June of 1986, following Patrick's hospitalization for behavioral problems, the School District conducted multidisciplinary staff conferences to further evaluate Patrick's special education needs. Representatives of DMHDD were invited to but did not attend the conferences. Following the conferences, the School District recommended that Patrick be placed at the Behavior Education Center, a more restrictive program than Patrick's previous special education program.

Patrick's parents disagreed with the placement, believing that Patrick's special education needs required a residential placement instead, and therefore requested a Level I due process hearing in order to resolve the dispute. On September 29, 1986, the Level I hearing officer determined that Patrick's educational needs were so complex as to require residential placement and that this residential placement was to be paid in full by the School District.

On October 9, 1986, the School District appealed from the Level I decision. During the pendency of this proceeding, Patrick's parents filed a request with DMHDD for an Individual Care Grant to cover the room and board costs attendant to a residential placement. On November 17, 1986, DMHDD denied this request. On December 1, 1986, the Level II hearing officer affirmed the Level I decision finding in favor of residential placement for Patrick. The Level II hearing officer did, however, note that a procedural void exists in Illinois for the proper handling of cases such as Patrick's and therefore the "school district is correct in their feeling that the problem has been, 'politically dumped' on the school district." The Level II hearing officer modified the Level I decision to the extent that the school district was ordered to involve DMHDD or other State agencies in a multidisciplinary staff conference to determine an appropriate residential placement. The record does not indicate that this post-Level II conference was ever convened by the School District.

On January 2, 1987, the School District filed a declaratory action in the circuit court of Cook County seeking judicial review of the Level II decision. The suit was filed against Patrick, his parents, ISBE and DMHDD, seeking reversal of the Level II residential placement decision or, in the alternative, a declaration of funding responsibility of ISBE or DMHDD if the placement decision were upheld by the court.

On June 10, 1987, Patrick's parents made an emergency motion to implement residential placement. The court granted the motion for interim residential placement and ordered the School District to pay the tuition, while ISBE and DMHDD were ordered to share in the cost of room and board. Patrick was placed at the Larkin Home for Children on August 3, 1987.

On March 28, 1988, Patrick's parents filed an application for interim attorney fees pursuant to 20 U.S.C. section 1415(e)(4)(B) (1988) against the School District. On September 27, 1988, the trial court ordered the School District to pay Patrick's parents $26,206.25 in attorney fees, having found that "the issue and disposition of the relative financial responsibility between ISBE and DMHDD for tuition, room & board, and Educational Advocate costs does not have any effect on petitioners' rights under HCPA, 94—142."

Thereafter, the School District moved to allocate the attorney fees either in whole, or in part, to ISBE and DMHDD on the ground that Patrick's parents had prevailed against those agencies. The School District contended that since ISBE and DMHDD were ordered to pay for room and board, the School District was a prevailing party *vis-a-*

*vis* ISBE and DMHDD. The trial court refused to apportion the attorney fees, finding that the School District had "unreasonably prolonged" the proceedings leading to Patrick's placement. It is from this order that the School District appeals.

■ The Education of the Handicapped Act (EHA) ensures that handicapped children are given access to free, public education by providing Federal funds to assist State and local agencies in meeting the special education needs of handicapped students. (20 U.S.C. §1400 *et seq.* (1988).) In 1986, Congress enacted the Handicapped Children's Protection Act (HCPA), which amended section 1415(e)(4) of the EHA to provide that:

> "[i]n any action or proceeding brought under this subsection, the court, in its discretion may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. §1415(e)(4)(B) (1988).

Patrick's parents were awarded attorney fees under section 1415, and the School District does not contest the parents' entitlement to such fees. Rather, the School District claims that it too is a prevailing party *vis-a-vis* ISBE and DMHDD and as such is entitled to have the attorney fees either assessed or apportioned to ISBE and DMHDD under section 1415(e)(4)(B). Specifically, the School District contends it was the prevailing party in the judicial proceedings it initiated in light of the fact that the noneducational costs of Patrick's residential placement were allocated to ISBE and DMHDD.

■ Initially, we note that it would be contrary to the language of section 1415(e)(4)(B) to assess the attorney fees to the DMHDD and ISBE based on a finding that the School District was the prevailing party. It is well settled that attorney fees cannot be awarded to a successful litigant in the absence of an authorizing statute or contract. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479.) Where statutory authority exists, courts may only enforce such a statute to the terms of its specific language. (*Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 425 N.E.2d 1344.) According to the plain language of section 1415(e)(4)(B), attorney fees may be granted to "parents or guardians of a handicapped child" who are prevailing parties. The section does not state that fees may be granted to school districts who are prevailing parties.

■ Furthermore, while Patrick's parents may have prevailed against DMHDD and ISBE by having these agencies pay for the cost of residential placement, the parents also prevailed over the School District by the very fact that the parents did obtain residential place-

ment for Patrick. To qualify as a prevailing party, a plaintiff must succeed in obtaining some relief from the defendant against whom attorney fees are sought. (*Max M. v. Illinois State Board of Education* (N.D. Ill. 1988), 684 F. Supp. 514, *aff'd* (7th Cir. 1988), 859 F.2d 1297.) The School District claims that from the outset, it agreed that Patrick required special education and it only disputed the necessity of Patrick's residential placement and ISBE and DMHDD's refusal to accept responsibility for the cost thereof. Thus, the School District contends that the direct and proximate cause of the attorney fees incurred by Patrick's parents was the refusal of ISBE and DMHDD to accept their financial responsibility for the room and board costs attendant to Patrick's residential placement.

A review of the record indicates that not only were the attorney fees incurred as a result of the refusal of ISBE and DMHDD to accept responsibility for the residential placement, but also as a result of the School District's failure to acknowledge Patrick's need for residential placement. In the administrative and judicial proceedings, the School District disputed both the necessity of Patrick's residential placement and the State defendants' refusal to accept responsibility for the cost thereof. It is abundantly clear from a review of the Level I and Level II decisions as well as the circuit court's order of July 10, 1987, that the parents have always sought residential placement for Patrick and have always obtained rulings that Patrick was in need of residential placement. The School District, throughout the proceedings, alleged that there was no need for residential placement. While the School District offered placement for Patrick at the Behavior Education Center, this in no way approximated the residential placement that the parents sought from the outset. Had the parents accepted the School District's placement offer, Patrick would not have been residentially placed. Given the fact that Patrick's parents' attorney fees were incurred in pursuit of a residential placement, which the School District opposed at the administrative and judicial levels, we would be remiss to find the School District free from responsibility for the attorney fees expended by the parents, the prevailing party in their pursuit of residential placement for Patrick.

While the School District is not completely relieved of responsibility for Patrick's parents' attorney fees, we refuse to hold the School District exclusively responsible for the fees. Rather, the responsibility for the fees should be apportioned among ISBE, DMHDD and the School District.

There is ample authority that in a section 1415 proceeding for fees, fees should be allocated between parties involved in the place-

ment of children who need special education and in administering the decree. Where the parents of the handicapped child have prevailed against both State and local defendants in pursuit of a special education program, the award is apportioned. See *Tonya K. v. Board of Education* (7th Cir. 1988), 847 F.2d 1243 (the Chicago Board of Education and ISBE to share equally the attorney fees, where class action plaintiffs obtained consent decree from both defendants); *Jose P. v. Ambach* (2d Cir. 1982), 669 F.2d 865 (fee award assessed 80% to city defendant and 20% to State defendant in proportion to their violation of law).

Apportionment is only proper where a plaintiff has obtained relief from both defendants. Consequently, even where a plaintiff has filed suit against State and local defendants, courts have refused to apportion fees to a defendant against whom the handicapped child has not prevailed. See *Max M. v. Illinois State Board of Education* (N.D. Ill. 1988), 684 F. Supp. 514, *aff'd* (7th Cir. 1988), 859 F.2d 1297 (since plaintiffs succeeded in obtaining relief from School District but not against ISBE, the School District was assessed all of the fees); *Counsel v. Dow* (2d Cir. 1988), 849 F.2d 731 (since plaintiff prevailed within the meaning of section 1415 with respect to certain defendants but not with respect to others, court imposed the cost of attorney fees only upon those against whom plaintiff prevailed); *J.G. v. Board of Education of the Rochester City School District* (W.D.N.Y. 1986), 648 F. Supp. 1452, *aff'd as modified & remanded* (2d Cir. 1987), 830 F.2d 444 (State defendant not liable for fees where plaintiff prevailed against local educational defendants only).

■ In the instant case, apportionment of attorney fees is appropriate by virtue of the fact Patrick's parents prevailed against the School District, DMHDD and ISBE in pursuit of residential placement for Patrick. The EHA enforcing regulations specifically provide that its requirements and obligations extend to all political subdivisions involved in the education of handicapped children (34 C.F.R. §300.2(b) (1990)) including:

(1)  The State education agency;

(2)  Local education agencies and intermediate educational units;

(3)  Other State agencies and schools (such as Departments of Mental Health and Welfare and State school for the deaf and blind); and

(4)  State correctional facilities.

Indeed, in *Parks v. Department of Mental Health & Developmental Disabilities* (1982), 110 Ill. App. 3d 184, 441 N.E.2d 1209, the

court recognized that the EHA was binding on DMHDD and on all other educational agencies of Illinois. Accordingly, since DMHDD and ISBE are subject to the EHA, both agencies are also subject to the imposition of attorney fees in appropriate circumstances.

This is an appropriate circumstance in which to apportion fees among the three agencies. As discussed above, the School District was responsible for this litigation in light of the fact that it challenged Patrick's need for residential placement. Furthermore, DMHDD refused to assume financial responsibility for the cost of residential placement, thereby compelling the School District to continue to litigate through administrative and judicial appeals. Representatives from DMHDD were invited to participate in the proceedings regarding Patrick's placement. DMHDD, however, declined to participate in these proceedings. In addition, Patrick's parents filed a request with DMHDD for an Individual Care Grant for the cost of room and board in residential placement. DMHDD also declined this request.

ISBE was involved in this dispute from its inception as a necessary consequence of its inherent and regulatory responsibility to oversee compliance with the EHA. (See 20 U.S.C. §1412(6) (1988); 34 C.F.R. §300.600 (1990).) The ultimate responsibility for assuring compliance with Federal law rests with ISBE. (*Parks v. Pavkovic* (N.D. Ill. 1982), 536 F. Supp. 296, 304, *aff'd in part & rev'd in part on other grounds* (7th Cir. 1985), 753 F.2d 1397; see *Stuart v. Nappi* (N.D. Conn. 1985), 610 F. Supp. 90 (court assessed fees upon both local and State defendants notwithstanding the fact that an order was never entered against the State defendant since the State educational agency is responsible for assuring that the local agencies comply with the policies of the EHA); *Jose P. v. Ambach* (2d Cir. 1982), 669 F.2d 865, 870-71 (in light of the fact that it is the responsibility of the State board of education to supervise local boards of education and to make sure that they are living up to their obligations to handicapped students, when the court entered an order against the local defendant commanding it to observe plaintiffs' rights under the Handicapped Act, the court was doing the State defendant's job).) In addition, the body responsible for rendering the Level II decision was the ISBE, and it ruled that the School District was fully responsible for the financial burden of the cost of the residential placement, thereby declining to assume the cost of the placement itself.

Ultimately, Patrick's attorney fees were incurred as a result of the School District's concern over whether Patrick was in need of residential placement, and if so, who would incur the cost of the placement. Had the School District not disputed Patrick's need for residen-

tial placement, had DMHDD attended the multidisciplinary conference and granted the parents' request for an Individual Care Grant and had ISBE carried out its duty to supervise the implementation of a residential placement for Patrick, these agencies might well have obviated the problem and for the need for this litigation altogether. Given the interrelationship between their responsibilities with respect to Patrick's residential placement and focusing on the relative degree of culpability among the agencies, we conclude that the School District, ISBE and DMHDD are each equally responsible for the attorney fees.

For the reasons set forth above, the decision of the circuit court of Cook County denying plaintiff's motion for allocation of attorney fees is reversed and the School District, DMHDD and ISBE are each assessed one third of Patrick's parents' attorney fees.

Reversed.

LORENZ, P.J., and GORDON, J., concur.